UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------x
                        :

FRANKLIN W. BLYTHE, et al.,        :

                        :

               Plaintiffs,   :

                        :

      - against -         :

                        :

DEUTSCHE BANK AG; DEUTSCHE    :     <u>OPINION AND ORDER</u>
BANK SECURITIES, INC., d/b/a     :
DEUTSCHE BANK ALEX BROWN, a  :       04 Civ. 5867 (SAS)
DIVISION of DEUTSCHE BANK     :
SECURITIES, INC.; CRAIG         :
BRUBAKER; DAVID PARSE; TODD   :
CLENDENING; BDO SEIDMAN LLP;  :
CHRISTOPHER TRUIT; MORRY    :
GOTTLIEB; PAUL SHANBROM;     :
ROBERT GREISMAN; THOM       :
TAYLOR; and CHARLES MCNEALY,  :

                        :

            Defendants.   :

------------------------------------------------------x

SHIRA A. SCHEINDLIN, U.S.D.J.:

## I.    INTRODUCTION

        Plaintiffs allege that defendants violated the Racketeer Influenced and

Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962, and are liable for

damages and other relief arising from unjust enrichment, breach of contract,

breach of the duty of good faith and fair dealing, breach of fiduciary duty, fraud,

negligent misrepresentation, professional malpractice, and civil conspiracy.

1

Deutsche Bank now moves to dismiss.

## II. BACKGROUND[1]

This case arises out of tax and consulting services marketed by defendants. The Complaint alleges that defendants defrauded plaintiffs through the marketing and sale of a tax shelter (a strategy involving digital options or swaps on foreign currency sometimes known as "COBRA") which they knew or should have known the IRS would challenge as lacking economic substance. Plaintiffs allege that the tax shelter scheme was developed by Deutsche Bank in concert with the law firm of Jenkens & Gilchrist, P.C..[2] Deutsche Bank agreed to act as the counter-party to the tax shelter transactions. Jenkens and Deutsche Bank recruited BDO and others to market COBRA to high net-worth clients, including plaintiffs.

Plaintiffs fall into six groups: Blythe, Ramsey, Zimmerman, Ekaireb, Baker, and Mosley. Each group consists of certain individual plaintiffs and the corporate entities through which they executed the COBRA Strategy. To carry out

---

[1]    The following facts are drawn from the Complaint ("Compl.") and are presumed to be true for the purpose of this motion.

[2]    Jenkens & Gilchrist is not named as a defendant.

2

the COBRA Strategy, the taxpayer first forms a limited liability company (LLC).[3]

Second, through the LLC, the taxpayer sells a short option and buys a long option

in almost identical amounts on a foreign currency. The options, referred to by

plaintiffs as "FX Contracts," were matters of private contract between the taxpayer

and Deutsche Bank, and were not traded on any securities exchange. The long

and short options have different, but very close strike prices. Third, the taxpayer's

LLC then contributes the options to a general partnership formed for the purpose

of conducting the COBRA transactions. After thirty days, the options expire.

Fourth, the taxpayer makes a capital contribution to the partnership, consisting of

cash or other assets: in most cases, as discussed below, this contribution involved

stock.[4] Fifth, the taxpayer contributes his or her interest in the partnership to an S

Corporation, terminating the partnership.[5] Finally, the S Corporation sells the

---

[3] The description of the COBRA Strategy is taken from the Complaint, ¶ 100. Each plaintiff group carried out the strategy in substantially the same manner, unless otherwise noted.

[4] The Blythe plaintiffs, for example, used stock in Pepsico, Inc. *See id.* ¶¶ 116, 118-19. With respect to the other plaintiff groups, the complaint does not specify the stock used. As discussed below, there is some question as to the involvement of stock in the Ekaireb and Baker transactions.

[5] The Ekaireb plaintiffs used pre-existing trusts, rather than an S Corporation created specifically for the purposes of the COBRA Strategy. *See id.* ¶ 127.

assets contributed by the taxpayer. The basis of these assets is artificially inflated by the offsetting options transactions. The taxpayer then sells the assets, claiming a substantial tax loss.

With the exception of the Baker and Mosley plaintiffs, each group engaged in the COBRA Strategy separately, using a separate set of COBRA Strategy entities. The Baker and Mosley plaintiff groups carried out the strategy together, using an entity known as Progressive Investments. Each plaintiff group engaged in the strategy between late 1999 and mid-2000. Plaintiffs filed tax returns for those years reflecting the losses from the COBRA Strategy.

In December 1999, and in August 2000, the IRS published notices stating that tax strategies such as COBRA were not lawful. In 2001, the IRS offered an amnesty program for individuals who had participated in COBRA and similar shelters. Defendants either failed to inform plaintiffs of the amnesty, or advised plaintiffs not to take advantage of it. Subsequently, plaintiffs retained new tax and legal advisors, and "discovered for the first time that the Defendants had, among other things, fraudulently induced them to participate in a bogus tax transaction that could succeed only if the IRS and state tax authorities neglected to audit their tax returns."[6] This suit followed.

---

[6]     *Id.* ¶ 156.

## III.  THE STANDARD OF REVIEW

A motion to dismiss should be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief."[7]  At the motion to dismiss stage, the issue "is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims.  Indeed, it may appear on the face of the pleading that a recovery is very remote and unlikely, but that is not the test."[8]

A complaint need not state the legal theory, facts, or elements underlying the claim except in certain instances.[9]  Pursuant to the simplified pleading standard of Rule 8(a) of the Federal Rules of Civil Procedure, "a complaint must include only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'"[10]  In contrast, the heightened pleading standard of

---

[7]      *Weixel v. Board of Educ. of New York*, 287 F.3d 138, 145 (2d Cir. 2002) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) (alterations omitted)).

[8]      *Phelps v. Kapnolas*, 308 F.3d 180, 184-85 (2d Cir. 2002) (quotation omitted).

[9]      *See Phillips v. Girdich,* No. 04-0347PR, 2005 WL 1154194, at *2-3 (2d Cir. May 17, 2005).

[10]      *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (quoting Rule 8(a)(2)).

Rule 9(b) requires that in claims of fraud or mistake "the circumstances constituting fraud or mistake shall be stated with particularity."[11]

The task of the court in ruling on a motion to dismiss is "merely to assess the legal feasibility of the complaint, not to assay the weight of evidence which might be offered in support thereof."[12] When deciding a motion to dismiss, courts must accept all factual allegations in the complaint as true and draw all reasonable inferences in plaintiff's favor.[13]

## IV.   DISCUSSION

Plaintiffs assert claims under RICO as well as a number of state law claims. RICO provides for civil and criminal liability for entities engaged in "a pattern of racketeering activity."[14] A person who suffers injury as a result of a RICO violation may sue an entity pursuant to 18 U.S.C. § 1964. To demonstrate a "pattern" of racketeering activity, a plaintiff must show at least two predicate acts

---

[11]     Fed. R. Civ. P. 9(b).

[12]     *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 176 (2d Cir. 2004) (quotation omitted).

[13]     *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).

[14]     18 U.S.C. § 1961 (a)-(d).

of racketeering activity occurring within a ten-year period.[15]

Defendants contend that section 107 of the Private Securities Litigation Reform Act ("PSLRA") of 1995,[16] bars plaintiffs' RICO claims because the alleged predicate acts describe conduct that is actionable as securities fraud. The PSLRA amended RICO to provide that "no person may rely upon conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962."[17] "In amending RICO, Congress was clear in stating that the PSLRA 'was meant to eliminate the possibility that litigants might frame their securities claims under a mail or wire fraud claim.'"[18]

> Consequently, a plaintiff cannot avoid the RICO Amendment's bar by pleading mail fraud, wire fraud and bank fraud as predicate offenses in a civil RICO action if the conduct giving rise to those predicate offenses amounts to securities fraud. Allowing such

---

[15]     18 U.S.C. § 1961(5).

[16]     Pub. L. No. 104-67, § 107.

[17]     18 U.S.C. § 1964(c).

[18]     *Jordan (Berm.) Inv. Co. v. Hunter Green Invs. Ltd.,* 205 F. Supp. 2d 243, 248 (S.D.N.Y. 2002) (quoting *Mezzonen v. Wright,* No. 99 Civ. 9380, 1999 WL 1037866, at *4 (S.D.N.Y. Nov. 16, 1999)). *See also* Joint Explanatory Statement of the Committee of Conference, in H.R. Conf. Rep. No. 104-369, reprinted in 1995 U.S.C.C.A.N. 730, 746 ("The Conference Committee intends that a plaintiff may not plead other specified offenses, such as mail or wire fraud, as predicate acts under civil RICO if such offenses are based on conduct that would have been actionable as securities fraud.").

surgical presentation of the cause of action [] would undermine the congressional intent behind the RICO Amendment.[19]

Therefore, on a motion to dismiss a plaintiff's RICO claims pursuant to the PSLRA bar, a court must determine whether the conduct alleged as predicate acts in the complaint could be actionable as securities fraud. However, this does not alter the general rule that on a motion to dismiss, "the favorable inferences belong to the Plaintiff and not the Defendants."[20]

Section 10(b) of the Securities Exchange Act makes it "unlawful for any person . . . to use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe."[21]  The Supreme

---

[19]    *Bald Eagle Area Sch. Dist. v. Keystone Fin., Inc.*, 189 F.3d 321, 328 (3d Cir. 1999). *Accord Gertz v. Ponsoldt*, 297 F. Supp. 2d 719, 730 (D. Del. 2003) ("[P]laintiff cannot circumvent the PSLRA's exclusion of securities fraud as a RICO predicate act through artful pleading."); *Burton v. Ken-Crest Servs., Inc.*, 127 F. Supp. 2d 673, 677 (E.D. Pa. 2001) ("Plaintiff cannot magically revive his claim by picking out discrete details of his allegations and then claiming that they are not actionable as securities fraud.").

[20]    *Gintowt v. Tl Ventures*, 239 F. Supp. 2d 580, 585 (E.D. Pa. 2002) (holding that "Defendants cannot force Plaintiff to plead the case the way Defendants think the facts should be. It may be eventually found that Plaintiff's claims do arise out of the purchase or sale of a security, but that is not clear from the Amended Complaint.").

[21]    15 U.S.C. § 78j.

Court has recently explained that the phrase 'in connection with' in section 10(b) should be "construed 'not technically and restrictively, but flexibly to effectuate [the statute's] remedial purposes.'"[22] While it is true that "[i]n general, the 'in connection with' element is met when the fraud alleged is that the plaintiff bought or sold a security in reliance on misrepresentations as to its value,"[23] it is not a requirement. In *SEC v. Zandford*, the Supreme Court observed that "neither the SEC nor this Court has ever held that there must be a misrepresentation about the value of a particular security in order to run afoul of the Act."[24] Instead, *Zandford* held that it is "enough that the scheme to defraud and the sale of securities coincide."[25] However, the Second Circuit has recently cautioned that, even under *Zandford*'s expansive reading of the Act, "[t]he fraud must be integral to the purchase and sale of the securities in question."[26]

---

[22]     *SEC v. Zandford,* 535 U.S. 813, 819 (2002) (quoting *Affiliated Ute Citizens v. United States,* 406 U.S. 128, 151 (1972)).

[23]     *Araujo v. John Hancock Life Ins. Co.*, 206 F. Supp. 2d 377, 383 (E.D.N.Y. 2002) (quotation omitted) .

[24]     *Zandford*, 535 U.S. at 820. *Accord A.T. Brod & Co. v. Perlow*, 375 F.2d 393 (2d Cir. 1967) ("it is established that a 10b-5 action will survive even though the fraudulent scheme or device is unrelated to 'investment value'").

[25]     *Zandford*, 535 U.S. at 820.

[26]     *Dabit v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 395 F.3d 25, 31 (2d Cir. 2005).

9

Here, the predicate acts alleged are mail and wire fraud.[27] Plaintiffs allege that the defendants, using telephone, electronic and mail communications, made numerous misrepresentations and fraudulent omissions regarding COBRA, in order to induce plaintiffs to engage in the COBRA transactions. Deutsche Bank contends that these alleged predicate acts would be actionable as securities fraud for three reasons.

*First,* Deutsche Bank argues that the Complaint alleges that plaintiffs were defrauded into believing that the FX Contracts were securities. Foreign currency options are securities if and only if they are entered into on a national securities exchange.[28] Deutsche Bank concedes that the FX Contracts were not traded on a national securities exchange, and were therefore not securities. However, Deutsche Bank contends that certain phrases in the Complaint imply that plaintiffs believed that the FX Contracts *were* traded on a national securities exchange. Deutsche Bank argues that "[t]his claim of being misled about the nature of the investment that they were making is a securities fraud claim. The federal securities laws protect investors who intend to purchase securities

---

[27]    *See* Compl. ¶¶ 185-90.

[28]    *See* 15 U.S.C. §§77b(a)(1), 78c(a)(10).

regardless of whether or not the securities in fact exist."[29]

Deutsche Bank points specifically to three passages of the Complaint. In the first passage, plaintiffs allege that "the FX Contracts were not something traded on any recognized exchange but were simply a matter of private contract between the participants [which] amounted, in actuality, to a contractual wager. . . . Of course, the plaintiffs were unaware of these aspects of the FX Contracts."[30] In the second passage, plaintiffs allege that they were not informed that "the FX Contracts had no reasonable possibility of a profit" and were essentially wagers.[31] In the third passage, plaintiffs allege that they "were not told that the [FX Contracts] were not an investment but merely a private contractual wager."[32]

---

[29]     Deutsche Bank's Memorandum of Law ("DB Mem.") at 5. Deutsche Bank relies on *SEC v. Gallard*, No. 95 Civ. 3099, 1997 WL 767570, at *3 (S.D.N.Y. Dec. 10, 1997). The defendant in *Gallard* was found to have violated the securities laws by offering instruments that *purported* to be securities, but in fact were not only not securities, but did not even exist. *See also SEC v. Lauer*, 52 F.3d 667, 670 (7th Cir. 1995) ("it is the representations made by the promoters, not their actual conduct, that determine whether an interest is an investment contract (or other security). A central purpose of the securities laws is to protect investors and would-be investors in the securities markets against misrepresentations. An elementary form of such misrepresentation is misrepresenting an interest as a security when it is nothing of the kind.") (citations omitted).

[30]     Compl. ¶ 43 n.3.

[31]     *Id.* ¶ 49.

[32]     *Id.* ¶ 114.

The paragraphs to which Deutsche Bank points could certainly support a reasonable inference that plaintiffs were misled into believing that the FX Contracts were securities, and relied on that misapprehension in entering into the Strategy.[33] However, on a motion to dismiss, the favorable inferences belong to plaintiffs. The Complaint alleges that plaintiffs were "unaware" of the true nature of the FX Contracts. To find that some or all plaintiffs positively believed the FX Contracts to be securities, and relied on that belief in entering into them, or to find that defendants promoted the FX Contracts as securities, would require drawing an inference in *defendants'* favor.[34]

*Second*, Deutsche Bank points to the fact that certain plaintiff groups created S corporations in order to carry out the COBRA Strategy.[35] Citing *Landreth Timber Co. v. Landreth*,[36] and *Sulkow v. Crosstown Apparel, Inc.*,[37]

---

[33] Plaintiffs deny that they had any such understanding. *See* Plaintiffs' Letter to the Court of April 29, 2005 ("April 29 Letter"), at 2.

[34] The Complaint also alleges that plaintiffs believed the FX Contracts to be 'investments' with a reasonable probability of profit, not mere wagers with no real chance of success. An 'investment' is not, however, synonymous with a 'security.'

[35] The Ekaireb plaintiffs apparently used existing trust entities to carry out the strategy. *See* Compl. ¶ 127.

[36] 471 U.S. 681, 693-94 (1985).

[37] 807 F.2d 33, 36-37 (2d Cir. 1986).

Deutsche Bank argues that the shares in these corporations are securities, and that the issuance of those shares to plaintiffs constitutes a "sale" under the federal securities laws. In *Heller v. Deutsche Bank*, Judge James Joyner of the Eastern District of Pennsylvania, addressing the same argument, observed that:

> While it is true that the Court held in *Landreth* that a single individual who purchased 100% of the stock in a privately-held corporation could state a claim under the securities laws for fraud in the sale of the business, its holding was premised upon the finding that the stock in question possessed all of the characteristics traditionally associated with common stock. Those characteristics are: (1) the right to receive dividends contingent upon an apportionment to profit; (2) negotiability; (3) the ability to be pledged or hypothecated; (4) conferring of voting rights in proportion to the number of shares owned; and (5) the capacity to appreciate in value.[38]

As in *Heller*, the complaint here does not provide enough information to determine whether "the S corporation 'stocks' at issue constitute 'securities'" under *Landreth*.[39] Once the record is more fully developed, Deutsche Bank may

---

[38] No. 04 Civ. 3571, 2005 WL 525401, at *4 (E.D. Pa. Mar. 3, 2005). *Accord Ling v. Deutsche Bank*, No. 04 Civ. 4566, 2005 WL 1244689, at *5 (S.D.N.Y. May 26, 2005) ("[B]ecause at this stage it is impossible to tell if the Plaintiffs' equity stake in the LLCs or S Corporations constitutes a security, it cannot be resolved on a motion to dismiss.").

[39] *Id.* In *Sulkow*, by contrast, the court had "no difficulty in determining that the complaint sufficiently alleged the purchase of an interest that meets the *Landreth* test. The complaint alleged that Sulkow agreed to purchase 'corporate stock' in Crosstown, and the Shareholders' Agreement, which was attached to the

renew this argument on summary judgment.[40]

*Third,* Deutsche Bank argues that the PSLRA bar applies because "a crucial element of [COBRA] was the purchase and sale of various securities to help generate the desired losses."[41] In *Stechler v. Sidley Austin Brown & Wood,* this Court found the PSLRA bar applicable to a tax shelter similar to COBRA. In *Stechler,*

> in order to carry out the Strategy, the Stechlers acquired an interest in the Fund, which was redeemed in exchange for the common stock of seven corporations ("the Common Stock"). The Common Stock, its basis artificially inflated pursuant to the Strategy, was then contributed to Joseph Stechler & Co., which subsequently sold the Common Stock at its fair market value, claiming a loss. This transaction in securities, undertaken in reliance on defendants' representations concerning the lawfulness of the Strategy, was a key step in the Strategy; had the Stechlers not acquired and sold the Common Stock, they would have had no tax losses. . .
>
> The Stechlers' Complaint [] consistently refers to the Strategy as

---

complaint, referred to the 'stock shares' to be issued. That agreement, referring to 'three equal shareholders,' revealed that Crosstown was a for-profit corporation, and it set forth provisions indicating that Sulkow's stock had proportional voting rights, rights to dividends, and the capacity to appreciate." *Sulkow,* 807 F.2d at 36-37. No such information is available here.

[40]    The Court makes no holding at this time as to whether, if the S corporation 'stocks' at issue here constitute securities, the alleged fraud would be 'in connection with' their sale.

[41]    DB Mem. at 3.

14

a single, unified product. The Stechlers allege that the defendants marketed the *Strategy*, not the individual steps required to carry it out; in reliance on defendants' representations, the Stechlers entered into the *Strategy,* not a series of unrelated transactions. The Common Stock transactions were a key part of that Strategy.[42]

In this case also, the predicate acts of mail and wire fraud alleged by plaintiffs are actionable as securities fraud, to the extent that those acts of fraud coincide with and are integrally related to the purchase and sale of securities. That is, the alleged acts of mail and wire fraud undertaken to induce plaintiffs to engage in COBRA transactions which utilized securities to achieve a tax loss are actionable as securities fraud, and may not be pled as predicate acts to support a RICO claim.

Plaintiffs attempt to distinguish this case from *Stechler* by arguing that "at least some of the Plaintiffs' transactions did *not* involve securities (but rather only foreign currency)."[43] Specifically, plaintiffs claim that "Baker's tax strategy did not involve any marketable securities."[44] Plaintiffs also state that their

---

[42]  No. 04 Civ. 5923, 2005 WL 774264, at *12 (S.D.N.Y. Apr. 05, 2005).

[43]  Plaintiffs' Letter to the Court of April 13, 2005 ("April 13 Letter") at 2.

[44]  *Id.* The Complaint alleges that the Baker plaintiffs and the Mosley plaintiffs jointly formed an entity known as Progressive Instruments in order to carry out the COBRA strategy, but that they otherwise carried out the strategy

complaint "alleges no purchase, sale or contribution of marketable securities by the Ekaireb plaintiffs during their participation in the tax strategy."[45] Therefore, plaintiffs argue that there are fact issues regarding the role of securities in certain plaintiffs' COBRA transactions which preclude dismissal of their claims.

In response, Deutsche Bank argues that, because plaintiffs allege a single fraudulent scheme, the fact that *any* plaintiff's COBRA transaction relied on the purchase and sale of securities is fatal to the RICO claims of *all* plaintiffs.[46] This argument goes too far. While acts undertaken to induce a plaintiff to engage in a securities-based COBRA Strategy are actionable as securities fraud, acts undertaken to induce a plaintiff to engage in a COBRA Strategy in which

---

through different entities. Progressive Instruments acquired both foreign currency and stock; the stock was distributed solely to entities created and operated by the Mosley plaintiffs, and the foreign currency was distributed solely to entities created and operated by the Baker plaintiffs. *See* Compl. ¶¶ 132, 133.

[45]     April 13 Letter at 2. This is at odds with the language of the Complaint. *See* Compl. ¶ 128 ("The transaction the Ekaireb Plaintiffs entered into was similar in form to the one entered into by the Blythe Plaintiffs. It differed in the size of the various "trades" and the type of currency and *stock* involved.") (emphasis added). Plaintiffs claim that, to the extent that the Complaint suggests that the Ekaireb plaintiffs' transactions involved stock, it is in error, and seek leave to amend. *See* April 29 Letter at 2.

[46]     *See* Deutsche Bank's Letter to the Court of April 15, 2005.

securities played no part are not actionable as securities fraud.[47] Therefore, those plaintiffs who engaged in a COBRA transaction which did not utilize securities may be able to allege a RICO claim without reliance on predicate acts that could have been pled as securities fraud.[48] However, plaintiffs may not rely on predicate acts that could have been pled as securities fraud — *i.e.*, misrepresentations made to induce plaintiffs to engage in securities-based COBRA transactions.

At present, plaintiffs' RICO allegations (drafted prior to this Court's decision in *Stechler*) rely indiscriminately on predicate acts that would be actionable as securities fraud, and on acts that would not be actionable as securities fraud, merging the two into a single scheme.[49] Plaintiffs may, however,

---

[47] If Deutsche Bank committed a fraud involving securities with respect to, *e.g.*, the Blythe plaintiffs, and a separate fraud not involving securities with respect to, *e.g.*, the Ekaireb plaintiffs, those acts of fraud might "coincide." However, they would be "independent [albeit similar] events," and the fraud against the Ekaireb plaintiffs would therefore not be "in connection with" a securities transaction. *Zandford,* 535 U.S. at 820.

[48] *See Ling,* 2005 WL 1244689, at *6-7 (holding that "[f]or at least some of these individual Plaintiffs, the sale of securities was necessary to effectuate the tax strategy, and *as to those* the RICO claims are actionable as securities fraud and are barred by the PSLRA") (emphasis added).

[49] The PSLRA bars a plaintiff from asserting RICO claims based on predicate acts that could be actionable under the securities laws even when the plaintiff, him- or herself, lacks standing to bring a securities fraud claim based on those acts. *See Heller,* 2005 WL 525401, at *3. *Accord In re Enron Corp. Securities, Derivative & ERISA Litig.,* 284 F. Supp. 2d 511, 620 (S.D. Tex. 2003);

be able to disaggregate their allegations so as to allege, in effect, two schemes: (1) a scheme, giving rise to certain plaintiffs' claims, to market securities-based COBRA transactions, which would be actionable as securities fraud, and (2) a scheme, giving rise to other plaintiffs' claims, to market non-securities based COBRA transactions, which would be actionable under RICO.

There is no diversity jurisdiction here; unless plaintiffs can assert a federal claim, whether RICO or securities fraud, their state law claims will not proceed in this Court.[50] Accordingly, plaintiffs' complaint is dismissed without prejudice. Plaintiffs are granted leave to amend their complaint and RICO statement so as to state a RICO claim on behalf of those plaintiff groups who may do so without reliance on predicate acts that would be actionable as securities fraud, and a securities fraud claim on behalf of other plaintiffs.[51]

---

*Gatz v. Ponsoldt*, 297 F. Supp. 2d 719, 731 (D. Del. 2003). Therefore, even those plaintiffs who do not have a securities fraud claim may not rely on acts of securities fraud as predicate acts to make out their RICO claims.

[50]    *See Rodriguez v. Haynes*, 341 F. Supp. 2d 416, 427 (S.D.N.Y. 2004) ("When all federal claims are dismissed at an early stage of a case, exercise of supplemental jurisdiction over remaining state law claims is usually inappropriate.").

[51]    As noted earlier, plaintiffs claim that the reference in their complaint to the Ekaireb plaintiffs' use of stock is in error. This is an additional reason to permit plaintiffs to amend. Of course, in doing so, plaintiffs must be mindful of their Rule 11 obligations.

# V. CONCLUSION

For the foregoing reasons, the Complaint is dismissed without prejudice, and plaintiffs are granted leave to amend their complaint as stated above. The Clerk of the Court is directed to close this motion [# 37].

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:    New York, New York
          May 31, 2005

## - Appearances -

**For Plaintiffs:**

David R. Deary, Esq.
W. Ralph Canada, Esq.
Jeven R. Sloan, Esq.
Stewart Clancy, Esq.
Deary Montgomery Defeo & Canada
Chateau Plaza
2515 McKinney Ave., Suite 1565
Dallas, Texas 75201
(214) 360-9622

Joe R. Whatley, Jr., Esq.
Othni J. Latham, Esq.
Whatley Drake L.L.C.
2323 2nd Ave., North
Birmingham, Alabama 35202
(205) 328-9576

Jeffrey H. Daichman, Esq.
Kane & Kessler, P.C.
1350 Avenue of the Americas
New York, New York 10019-4896
(212) 541-6222

Ernest Cory, Esq.
Cory Watson Crowder & Degaris
2131 Magnolia Ave.
Birmingham, Alabama 35205
(205) 328-2200

**For the Deutsche Bank Defendants:**

Lawrence M. Hill, Esq.

Seth C. Farber, Esq.
Dewey Ballantine, L.L.P.
1301 Avenue of the Americas
New York, New York 10019-6092
(212) 259-8000

**For the BDO Defendants:**

Michael R. Young, Esq.
I. Bennett Capers, Esq.
Anamika Samanta, Esq.
Wilkie Farr & Gallagher, L.L.P.
787 Seventh Avenue
New York, New York 10019-6099
(212) 728-8000